IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA – LAS VEGAS

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> ROCCO BRANDONISIO, ET AL, <br><br> Defendants. | Case No. 2:11-cv-02011 |

## DECLARATION OF CHRISTY WHITE

I, Christy J. White, declare as follows:

1.  I am an Assistant Chief Litigation Counsel with the United States Securities and Exchange Commission, Division of Enforcement, Office of Collection, in Washington, DC, and I am personally familiar with the facts stated herein.

2.  I am the attorney assigned to collection efforts on the judgment obtained against Defendant, Gregg R. Mulholland ("Mulholland" or "Defendant") on September 24, 2013 ("Final Judgment").[1] As of the date of this Declaration, Mulholland has not voluntarily paid any of the amounts due on the Judgment.

3.  The Commission sent a Demand Letter to Mulholland at his then last known address on May 14, 2014. A true and correct copy is attached hereto as Exhibit 1. Upon information and belief Mulholland has since relocated to West Vancouver, Canada.

4.  In furtherance of its collection efforts, the Commission also issued certain subpoenas to financial institutions and various third party service providers in an attempt to

---

[1] Mulholland's judgment was bifurcated. A judgment was entered with his consent on January 19, 2012, which did not include any disgorgement or civil penalty amounts ordered by the Court to be paid by Mulholland. The September 24, 2013 judgment identified the specific amounts Mulholland was ordered to pay.

ascertain Mulholland's financial condition and ability to pay the Judgment. Through documents produced in connection with these subpoenas, the Commission ascertained that Mulholland had the ability to comply with the Court's Order.

## MULHOLLAND'S AMERICAN EXPRESS CREDIT CARD

5. In response to a subpoena issued by the Commission, American Express produced certain documents relating to a credit card account in Mulholland's name ending in x93008 ("Amex Credit Card"). The billing address for the Amex Credit Card was 30302 Malaspina Road, San Juan Capistrano, CA 92675 ("Malaspina Property"). True and correct copies of excerpts of the Amex Credit Card file are attached hereto as referenced in Paragraphs 11 and 15 below.

6. Attached hereto as Exhibit 2 is a summary detailing the cash flows of the Amex Credit Card. Included therein is a listing of post-judgment debits and credits starting from August 28, 2013, and going through January 28, 2015. This Exhibit 2 is submitted pursuant to and in accordance with Rule 1006 of the Federal Rules of Civil Procedure. True and correct copies of the documents used to create this summary exhibit are available to Defendant and this Court at the Court's request and instruction.

7. Between November 5, 2010 and October 17, 2014, Mulholland used his Amex Credit Card to charge over $16,000 to Corporations Today, Wyoming Corporate Services, and VCorp Services, which specialize in providing one-day business formation services and selling dormant business entities known as shelf companies.[2]

---

[2] Corporations Today and Wyoming Corporate Services have the same owner and operator. As a result, the two companies are used interchangeably when providing services to clients and for billing purposes, and they shall be referred to interchangeably herein.

## MULHOLLAND'S SHELL COMPANIES/ALTER EGOS

8. Based, in part, on the production received from American Express, the Commission determined that Mulholland owned or controlled several business entities through which he received and paid out millions of dollars.

9. Upon information and belief Mulholland formed business entities including Black Foot Resources, Inc. ("Black Foot"), Global Lead Gen, Inc. ("GLG") f/k/a Stampeeder Systems, Inc. ("Stampeeder"), Vision Crest Consulting Group Limited, LLC ("Vision Crest"), Data Source, Inc. ("Data Source"), and Alpine International Aviation, LLC ("Alpine") (collectively "Mulholland Companies"), using Corporations Today, Wyoming Corporate Services, and VCorp Services.

10. Upon information and belief, the Mulholland Companies are shell companies that serve as Mulholland's alter egos.

**Black Foot Resources, Inc.**

11. On November 5, 2010, Mulholland's Amex Credit Card reflects a charge of $3,260 to Corporations Today. A true and correct copy of Amex Credit Card statements that reflect payments related to Black Foot is attached hereto as Exhibit 3.

12. In response to a subpoena issued to Corporations Today, the Commission received copies of documents relating to transactions and services purchased with Mulholland's Amex Credit Card. The initial transaction for Black Foot occurred on November 5, 2010, the same day as the abovementioned charge. True and correct copies of excerpted items from the Corporations Today production are attached hereto as Exhibit 4.[3]

---

[3] *See also* Paragraph 18 for additional true and correct copies of documents produced by Corporations Today in response to the Commission's subpoena.

13.     Black Foot was incorporated in Wyoming five days later on November 10, 2010. A true and correct copy of Black Foot's Filing Information from the Wyoming Secretary of State Business Division's website is attached hereto as Exhibit 5.  Dale Paisley ("Paisley") is the only director or officer on record with the Wyoming Secretary of State.

14.     Invoices for the renewal of various services from Wyoming Corporate Services were paid by Mulholland's Amex Credit Card on October 17, 2011 (for $1,210), November 30, 2012 (for $1,260), October 15, 2013 (for $1,262), and October 16, 2014 (for $1,260).  *See* Ex. 3.

**Vision Crest Consulting Group, Inc.**

15.     On September 20, 2011, Mulholland used his Amex Credit Card to purchase and have Vision Crest incorporated in California for $535.  True and correct copies of (a) VCorp Services' Articles of Organization for Vision Crest and invoice for expedited formation; and (b) Mulholland's September 2011 Amex Credit Card statement are attached hereto as Exhibits 6 and 7 respectively.

16.     Vision Crest's Articles of Incorporation were filed in California on the same day. Its sole member is listed as: Vision Crest Consulting Group, Inc., LTD, a Hong Kong corporation.  Terry Turner ("Turner") is listed as Vision Crest's organizer and registered agent. [4]

**Data Source, Inc.**

17.     On August 21, 2012, Mulholland's Amex Credit Card reflects a charge of $900 to Corporations Today.  True and correct copies of Amex Credit Card statements that reflect payments related to Data Source are attached hereto as Exhibit 8.

18.     Production from Corporations Today verifies that an order was processed for Data Source on August 21, 2012.  True and correct copies of excerpted items from the Corporations Today production are attached hereto as Exhibit 9.

---

[4] In other documents, registered agent and attorney, Terry Turner, is also listed as a member and/or manager.

19. Data Source was incorporated in Wyoming on August 24, 2012. A true and correct copy of Data Source's Filing Information from the Wyoming Secretary of State Business Division's website is attached hereto as Exhibit 10. Mulholland and Paisley are listed as the initial directors; however, only Paisley is currently reflected on the Wyoming Secretary of State website.

20. Invoices for the renewal of various services from Wyoming Corporate Services were paid by American Express charges on July 16, 2013 (for $135), and July 18, 2014 (for $287). *See* Ex. 8.

### FINANCIAL INSTITUTIONS THROUGH WHICH MULHOLLAND AND HIS ENTITIES OPERATED

**East West Bank**

21. In response to a subpoena issued by the Commission, East West Bank produced certain documents relating to a checking account in the name of Vision Crest ending in x1493 ("EW Account"). Turner is listed on the signature card. A true and correct copy of the EW Account Signature Card is attached hereto as Exhibit 11.

22. The EW Account was used to make monthly loan payments and pay expenses relating to the renovations and construction work at Mulholland's most recent primary residence in the United States, Malaspina Property, including paying the project manager Jaime "Jimmy" Gomez ("Gomez").

23. Attached hereto as Exhibit 12 is a summary detailing the cash flows of the EW Account. Included therein is a listing of post-judgment debits and credits starting from February 2012, through March 2015. This Exhibit 12 is submitted pursuant to and in accordance with Rule 1006 of the Federal Rules of Civil Procedure. True and correct copies of the documents

used to create this summary exhibit are available to Defendant and this Court at the Court's request and instruction.

24. More than $2.7 million flowed through the EW Account between January 19, 2012, the date on which this Court entered a judgment against Mulholland, and November 26, 2014, when the account was closed. Of the $2,483,940.88 paid or otherwise transferred to Vision Crest:

   a. $123,000 was received from Turner;

   b. $100,000 was received from Data Source;

   c. $337,187.95 was received from Canadian company Seven Technology Systems Corporation (a/k/a 7 Technology Systems Corp.); and

   d. $439,940 was received from a second Vision Crest account.

25. In response to a subpoena issued by the Commission, East West Bank also produced certain documents relating to a loan account in the name of Vision Crest ending in x5683 ("EW Loan"). The EW Loan had a principal amount of $1.4 million, and was used to partially finance the purchase of the Malaspina Property. According to the bank's file, the Malaspina Property's owner would reside there with his family. The loan was conditioned upon certain renovations being done to complete construction on the house. True and correct copies of excerpted items from the EW Loan file are attached hereto as Exhibit 13.

**Security First Bank**

26. In response to a subpoena issued by the Commission, Security First Bank produced certain documents relating to a checking account in Data Source's name ending in x5412 ("SF Account"). Mulholland and Paisley are the owners of this account. The co-owners

indicated that the normal account activity would involve large wire transfers. A true and correct copy of the opening documents for the SF Account is attached hereto as Exhibit 14.

27. The SF Account was initially funded by a February 1, 2013 bank check in the amount of $49,422.60, which was issued with funds from a Capital Bank account in the name of Data Source. The funds for that bank check were transferred from an account in the name of Canadian company, Retail Source 1 Corporation. A true and correct copy of the initial deposit is attached hereto as Exhibit 15.

28. In response to a subpoena issued by the Commission, Capital Bank produced certain documents relating to a checking account in Data Source's name ending in x2744 ("Capital Account"), and accounts in the name of Mulholland, and GLG. After the Capital Account received a transfer of $49,982 from Retail Source 1 Corporation, it was closed to fund the SF Account. True and correct copies of the last two bank statements for the Capital Account are attached hereto as Exhibit 16.

29. Attached hereto as Exhibit 17 is a summary detailing the cash flows of the SF Account. Included therein is a listing of post-judgment debits and credits starting from February 2013, through March 2015. This Exhibit 17 is submitted pursuant to and in accordance with Rule 1006 of the Federal Rules of Civil Procedure. True and correct copies of the documents used to create this summary exhibit are available to Defendant and this Court at the Court's request and instruction.

30. The SF Account received incoming wire transfers from several business entities; however, only two appear to be U.S. companies: Vision Crest and Black Foot. The following are Canadian companies that wired large amounts of money to the SF Account:[5]

---

[5] David Schindler is linked to each of the Canadian companies listed. He appears as either the principal attorney or the sole director of the companies. Each uses the same registered office address located in Calgary, Alberta.

- $ 199,944 from Seven Technology Systems Corporation (a/k/a 7 Technology Systems Corp.);[6]

- $ 1,021,380 from Retail Source 1 Corporation;

- $655,285 from 2 World Data Tech Consultancy Inc. ("2 World Data");[7]

- $99,980 from Petroltech Retail Systems, Inc. ("Petroltech").[8]  True and correct copies of company registration documents for the abovementioned Canadian entities are attached hereto as Exhibit 18.

31.    Several large interbank transfers were also received from what appears to be Paisley's personal account.[9]

32.    Outgoing wire transfers from the SF Account in excess of $1.8 million were made from February 2013 through March 15, including the following:

- $959,325.68 to Mulholland's personal bank account at Capital Bank;[10]

- $250,000 to Arsenal Venture Group, LLC;

- $350,000 to Panorama Investment Group, LLC;

- $215,199.91 to Black Foot; and

- $100,000 to Vision Crest.

33.    In addition to the checks and wires payable to Mulholland, the SF Account has been used to pay Mulholland's Amex Credit Card bills since November 20, 2013.  As of

---

[6] (*See* ¶ 34 for additional financial transactions involving Seven Technology Systems Corporation and Vision Crest).
[7] Upon information and belief 2 World Data was initially formed outside of Alberta, Canada on May 24, 2013.  It was registered in Alberta four days later on May 28, 2013.  Mulholland's Amex Credit Card reflects two charges to Corporations Today for a combined $2,040 on May 20, 2013.
[8] Upon information and belief Petroltech was initially formed outside of Alberta, Canada on May 25, 2013.  It was registered in Alberta three days later on May 28, 2013.  Mulholland's Amex Credit Card reflects two charges to Corporations Today for a combined $2,040 on May 20, 2013.  Since the documents were first produced to the Commission, Security First closed all of its accounts related to Mulholland and Paisley.
[9] Upon information and belief, Paisley had several accounts with Security First and other banks at which Mulholland and his entities have accounts.  One such account is believed to end in x3616, which transferred large sums of money to Data Source's SF Account.
[10] This amount also includes checks made payable to Mulholland.

February 6, 2015, the SF Account paid a total of $1,094,819.68 towards Mulholland's Amex Credit Card. A true and correct copy of a listing of payments received by American Express from the SF Account is attached hereto as Exhibit 19.

34. The SF Account also paid for expenses relating to the renovations at the Malaspina Property, including $77,638.66 to the project manager, Gomez.

### 30302 MALASPINA ROAD, SAN JUAN CAPISTRANO, CA 92675

**2011 Purchase of the Malaspina Property**

35. Mulholland, through Vision Crest, purchased the Malaspina Property, a custom built home, for $3,100,000. A true and correct copy of the deed conveying the Malaspina Property to Vision Crest is attached hereto as Exhibit 20. The property was being developed as part of a gated community in Orange County, California; however, the developer experienced financial trouble, could not complete the project, and sold it before work was completed.

36. The house featured 6 bedrooms, 9 bathrooms and 11,000 square feet, while the grounds boasted resort style swimming pools with multiple waterfalls and a waterslide, all on a 2.7 acre gated estate. A true and correct copy of an online listing for the Malaspina Property listing in 2011 is attached hereto as Exhibit 21.

37. In response to a subpoena issued by the Commission to the Malaspina Homeowners Association ("Association"), certain documents were produced relating to the Malaspina Property. Included therein were copies of checks remitted from the SF Account and Mulholland's personal account at Capital Bank to pay: (a) the annual dues owed for the Malaspina Property; and (b) for damage caused by Mulholland to the lake dock located within the Association. True and correct copies of cancelled checks remitted to the Association for the Malaspina Property are attached hereto as Exhibit 22.

38. Dues owed to the Malaspina Homeowners Association for the year 2013 were remitted by a personal check drawn on an account in the name of Mulholland and his wife, Delia. *See* Exhibit 20.

**Malaspina Property Renovations**

39. In response to a subpoena issued by the Commission to Citadel Escrow, a copy of the file reflecting the 2014 sale of the Malaspina Property was provided. True and correct copies of excerpts of this production are attached hereto as Exhibit 23.

40. A copy of the California Real Estate Withholding Form ("Form 593-E") filed in connection with the sale of the Malaspina Property disclosed that additions and improvements had been made to the property in the total amount of $4,768,341. *See* Exhibit 23.

41. Many of the renovation costs were charged to Mulholland's Amex Credit Card. Mulholland predominantly used the SF Account to pay the outstanding balance on his Amex Credit Card each month.

42. In response to a subpoena issued by the Commission to Century 21 Design Group ("Century 21"), principal Gabriel Flores provided an affidavit and copies of text messages, emails, and payments regarding Century 21's agreement with Mulholland to obtain permits for construction work on the Malaspina Property and designs for its new guest house. True and correct copies of excerpted items from that file are attached hereto as Exhibit 24.

43. Payments were remitted to Century 21 Design Group from Vision Crest's EW Account, Data Source's SF Account, and a Bank of America account in the name of Black Foot.

**2014 Sale of the Malaspina Property**

44. In response to a subpoena issued by the Commission, Sotheby's International Realty ("Sotheby's") produced a copy of its file relating to the sale of the Malaspina Property in

2014.  Included therein were copies of text and email messages to and from Mulholland, and the Malaspina Property listing materials.  From these documents it is clear that Mulholland and his family were residing at the Malaspina Property, Mulholland was the Malaspina Property's true owner, and he was involved in every decision made with respect to its listing and subsequent sale.  In order to disguise his interest in the Malaspina Property, however, Mulholland did not sign any of the documents relating to the sale.  Instead, Turner was authorized to execute the sales documents.  True and correct copies of excerpted items from the Sotheby's production are attached hereto as Exhibit 25.

45. In connection with the sale of the Malaspina Property Mulholland provided the purchaser with a list of recommended vendors in the neighborhood.  The list included vendors who could provide a 9-seat Falcon 50 private jet for $3,850 per hour, a petting zoo, chauffer services, and a pet spa. [11]

46. The Malaspina Property sold on or about December 8, 2014, for $8,599,000.  The net proceeds were $8,100,102.86, $8,040,102.86 of which was paid to or for the benefit of Mulholland and Vision Crest as follows:

    a. $5,000,000 was wired to Canadian firm, Direction Legal LLP, for the benefit of Vision Crest;

    b. $2,940,102.86 was wired ultimately to a Canadian Imperial Bank of Commerce Account in the name of Vision Crest;

    c. $100,000 was wired to a Canadian realty group called Angell Hassman & Associates (Eric Christiansen) Realty; and

---

[11] The Falcon 50 is owned by Mulholland through Alpine and leased to FUGA, Inc., which is ran by charter operator Robert Salvo.

      d.      $60,000 went to attorney Terry Turner who serves as Vision Crest's registered agent and had power of attorney to execute the sale documents. *See* Exhibit 23.

## 3630 MATHERS AVENUE, WEST VANCOUVER, BC V7V 2L1

47.    In response to a subpoena issued by the Commission to Schick Moving and Storage ("Schick"), a copy of the file documenting a contract between Schick and Mulholland was provided. Schick agreed to transport Mulholland and his family's belongings from the Malaspina Property to Vancouver, Canada. True and correct copies of excerpted items from the Schick file are attached hereto as Exhibit 26.

48.    The address to which Mulholland's personal belongings were to be delivered was 3630 Mathers Avenue, West Vancouver, BC V7V 2L1 ("Mathers Property").

49.    The Mathers Property was listed by Eric Christiansen on April 10, 2014. True and correct copies of a tweet by Eric Christiansen regarding the Mathers Property, and the Mathers Property listing sheet are attached hereto respectively as Exhibits 27 and 28.[12]

50.    On December 2014, Direction Legal LLP represented Vision Crest in its purchase, in cash, of the Mathers Property for $4,850,000 (Canadian).[13] A true and correct copy of the British Columbia Assessment Roll Report is attached hereto as Exhibit 29.

Executed this 16th day of November, 2015, in Washington, District of Columbia

                                        /s/ Christy J. White
                                        Christy J. White
                                        Assistant Chief Litigation Counsel
                                        United States Securities and Exchange Commission

---

[12] Eric Christiansen is also mentioned in one text message from Mulholland to the sales agent at Sotheby's and a transfer of funds from the proceeds of the Malaspina Property sale in 2014. *See* Ex. 25, p. 14.

[13] Vision Crest was registered as an extra provincial company in British Columbia on July 10, 2013. David Schindler is the listed attorney and the principal office is located at the same address as the Canadian companies referenced in Paragraph 28 of this Declaration.